**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-CV-62288-STRAUSS**

**LEON HAY,**

       Plaintiff,

v.

**KILOLO KIJAKAZI,**
Acting Commissioner of Social Security,

       Defendant.

_____/

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 31] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 32]. The Court has reviewed both motions and all other pertinent portions of the record. For the reasons discussed herein, Plaintiff's Motion [DE 31] will be **DENIED** and Defendant's Motion [DE 32] will be **GRANTED**.

**I.**      **BACKGROUND & PROCEDURAL HISTORY**

Plaintiff applied for supplemental security income on January 11, 2019. Tr. 165, 180, 403. His claim was denied initially and upon reconsideration. Tr. 151-80. Thereafter, Plaintiff appeared with counsel at a telephonic hearing before an Administrative Law Judge ("ALJ") on April 3, 2020. Tr. 103. On April 27, 2020, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. 103-15. On September 24, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 91-93. Consequently, on November 11, 2020, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

Thereafter, the Commissioner discovered irregularities in the hearing recording process for this case. *See* [DE 15]. As a result, this matter was remanded to the Commissioner for further administrative proceedings under sentence six of 42 U.S.C. § 405(g). *See* [DE 16, 18]. Following remand, Plaintiff appeared with counsel at a telephonic hearing before the ALJ on July 20, 2022; a vocational expert ("VE") also testified at the hearing. Tr. 59-90. On October 21, 2022, the ALJ issued a decision again finding that Plaintiff was not disabled. Tr. 33-51. The ALJ then issued an amended decision on October 26, 2022, with one small addition (*see* Tr. 5), but the same ultimate determination that Plaintiff was not disabled. Tr. 4-22. Subsequently, this case was reopened. *See* [DE 23]. Plaintiff now seeks review of the Commissioner's final decision – the ALJ's October 26, 2022 decision. *See* 20 C.F.R. § 416.1484.

## II.   STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at 1240

n.8); *Bloodsworth*, 703 F.2d at 1239.  In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards.  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.   DISCUSSION

#### A. THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history."  *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)); *see also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 416.920.  This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).  If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment."  An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. § 416.920(c).  If no severe impairment is found, then the ALJ will conclude that there

is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See* 20 C.F.R. § 416.920(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. § 416.920(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. 20 C.F.R. § 416.920(d). If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 416.920(e). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others. 20 C.F.R. § 416.945(a)(3). The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. § 416.920(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five. "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.* At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work. *See* 20 C.F.R. §§ 416.920(g), 416.960(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. *See* 20 C.F.R. pt. 404, subpt. P, app. 2. The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. § 416.969. The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. § 416.969. Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (citation omitted); *see also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC. *Hargis*, 945 F.2d at 1490. However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003). A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

### B. ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that Plaintiff was not disabled. *See* Tr. 4-22.  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date (January 11, 2019).  Tr. 7.  At step two, the ALJ found that Plaintiff had the severe impairments of cervical and lumbar disc disease, hypertension, personality disorder, schizophrenia, and polysubstance abuse disorder.  Tr. 7.  The ALJ also discussed various other impairments that she found to be nonsevere.  Tr. 7-9.  Next, at step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 9-12.

The ALJ next assessed Plaintiff's RFC, determining that Plaintiff has the RFC:

> to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. [Plaintiff] can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; stoop; kneel; crouch; and crawl. [Plaintiff] can tolerate occasional exposure to hazards. [Plaintiff] can concentrate and persist to complete simple and routine tasks that involve up to 3 step commands. He can tolerate occasional interaction with supervisors, co-workers and the public. Finally, [Plaintiff] can adjust to gradual changes in a routine work setting, but not work that is production-rate paced.

Tr. 13.

After assessing Plaintiff's RFC, the ALJ found that Plaintiff has no past relevant work.  Tr. 21.  Therefore, the ALJ considered Plaintiff's age, education, work experience, and RFC to determine whether a significant number of jobs, that Plaintiff could perform, exist in the national economy.  Tr. 21-22.  Relying on the VE's testimony, the ALJ determined that Plaintiff is able to perform the jobs of car wash attendant (with approximately 38,000 jobs in the nation), housekeeper (with approximately 221,000 jobs in the nation), and produce sorter (with approximately 9,000 jobs in the nation).  Tr. 21-22.  As a result, the ALJ concluded that Plaintiff is capable of making

a successful adjustment to other work existing in significant numbers in the national economy.  Tr. 22.  In light of this conclusion, the ALJ found that Plaintiff was not disabled.  Tr. 22.

## C. <u>ANALYSIS</u>

In his motion, Plaintiff raises two arguments.  First, Plaintiff contends that the ALJ erred in evaluating the medical opinions and the prior administrative medical findings of the state agency psychologists.   Second, Plaintiff contends that the ALJ erred by failing to resolve apparent conflicts between the VE's testimony and the DOT.  As discussed herein, both arguments fail.

### 1.  MEDICAL OPINIONS & PRIOR ADMINISTRATIVE MEDICAL FINDINGS

An ALJ is required to evaluate medical opinions and prior administrative medical findings in the manner set forth in 20 C.F.R. § 416.920c.  Here, Plaintiff contends that the ALJ erred in evaluating both the prior administrative medical findings (of the state agency psychologists) and the medical opinions of Addys Prieto, Psy.D., Carmen Cornide, Psy.D., and Richard Edouard, M.D., FAAFP.  In response, Defendant asserts that neither Dr. Prieto nor Dr. Cornide provided a "medical opinion" – meaning that the ALJ was not required to evaluate their statements under § 416.920c – and that the ALJ did not err in evaluating Dr. Edouard's opinion or the prior administrative medical findings of the state agency psychologists.  As discussed herein, the Court agrees with Defendant.

#### a.  Dr. Prieto & Dr. Cornide

The parties disagree over whether certain statements made by Dr. Prieto and Dr. Cornide qualify as "medical opinions."  When discussing the evidence of record, the ALJ stated that neither Dr. Prieto nor Dr. Cornide "provide[d] an opinion regarding [Plaintiff's] mental functional limitations."  Tr. 18, 19.  Plaintiff, however, contends that Dr. Prieto's statements include two medical opinions – that Plaintiff had (1) "poor social judgment" and (2) "poor recent memory."

Plaintiff's Motion at 9.  Likewise, Plaintiff contends that Dr. Cornide's statements include two medical opinions – (1) Plaintiff's "concentration seemed compromised" and (2) Plaintiff "had difficulty with recent memory."  *Id.*

The statements Plaintiff identifies are not "medical opinions."  "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) *and* whether you have one or more impairment-related limitations or restrictions in the abilities" to perform various demands of work activities.  20 C.F.R. § 416.913(a)(2) (emphasis added); *see also Staheli v. Comm'r, SSA*, 84 F.4th 901, 906 n.2 (10th Cir. 2023) (recognizing that for a statement from a medical source to qualify as a "medical opinion," it must address "*both* what the claimant can still do despite her impairment(s) *and* whether she has one or more impairment-related limitations or restrictions in specified abilities" (cleaned up)).  Such demands include mental demands of work activities, "such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting."  20 C.F.R. § 416.913(a)(2)(i)(B); *see also Gregory v. Comm'r, Soc. Sec. Admin.*, No. 21-14103, 2023 WL 4542674, at *8 n.9 (11th Cir. July 14, 2023).  Notably, "[m]ere diagnostic statements or 'judgments about the nature and severity of . . . impairments' are not 'medical opinions.'" *Austin v. Kijakazi*, 52 F.4th 723, 729 n.3 (8th Cir. 2022).

Dr. Prieto evaluated Plaintiff on May 6, 2019.  *See* Tr. 3272-74.  In the mental status section of her report, she noted, *inter alia*, that "[r]ecent memory appeared poor" and that "[s]ocial judgment appeared poor."  Tr. 3473-74.  Dr. Cornide evaluated Plaintiff on May 25, 2021.  Tr. 5284-86.  In the mental status section of her report, she noted, *inter alia*, that Plaintiff's "concentration seemed compromised" and that Plaintiff "was able to recall three of three objects

immediately but none of three objects after a five minute delay, indicating adequate immediate memory *but possible issues with recent memory*." Tr. 5285 (emphasis added).

The foregoing statements by Dr. Prieto and Dr. Cornide are not "medical opinions." Neither doctor opined as to what Plaintiff can still do despite his impairments. Additionally, as Defendant notes, neither doctor opined regarding any specific limitations or restrictions that Plaintiff has. Rather, Dr. Prieto merely observed during her consultative examination with Plaintiff that Plaintiff's recent memory and social judgment "appeared" poor, and Dr. Cornide merely observed during her consultative examination with Plaintiff that Plaintiff's concentration "seemed" compromised and that Plaintiff had "possible" issues with recent memory. Significantly, though, neither doctor opined regarding Plaintiff's abilities to remember, concentrate, or use social judgment (or any other mental demands) in a work setting. Accordingly, it is evident that the statements Plaintiff points to are not "medical opinions." *Cf. Dye v. Comm'r of Soc. Sec.*, No. 5:20-CV-459-NPM, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022) ("None of the statements in Downey's letter assess the extent to which Dye can perform any particular function in a work setting, and so they do not constitute 'medical opinions' for purposes of the applicable regulatory regime."). Therefore, the ALJ correctly concluded that neither Dr. Prieto nor Dr. Cornide "provide[d] an opinion regarding [Plaintiff's] mental functional limitations." Tr. 18, 19.

### b. Dr. Edouard

Dr. Edouard opined that a cane is "medically necessary" for Plaintiff. The ALJ found that his opinion was not persuasive. Plaintiff argues that the ALJ erred in finding Dr. Edouard's opinion unpersuasive. The ALJ did not err.

Because Dr. Edouard provided a medical opinion (which is not disputed here), the ALJ was required to perform the assessment required under 20 C.F.R. § 416.920c for medical opinion evidence and prior administrative medical findings.  Under § 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a).  Rather, the ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings based upon five factors: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) 'other factors that tend to support or contradict' the opinion" or finding. *Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)).  Supportability and consistency are the most important factors.  20 C.F.R. § 416.920c(a).

Although an ALJ is not required to provide a specific weight to medical opinions, the ALJ still needs to articulate how persuasive the ALJ finds medical opinions and prior administrative medical findings to be.  20 C.F.R. § 416.920c(b).  Nonetheless, § 416.920c makes clear that in doing so, an ALJ is "not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually."  20 C.F.R. § 416.920c(b)(1).  In other words, if a single source offers multiple medical opinions or multiple administrative medical findings, an ALJ only needs to collectively address the source's opinions or findings in a single analysis rather than including a separate analysis for each opinion or finding. 20 C.F.R. § 416.920c(b)(1).  In that analysis, the ALJ must explain how she considered the factors of supportability and consistency, but the ALJ is generally not required to explain how she considered the other three factors.  20 C.F.R. § 416.920c(b)(2)-(3).  Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a

10

medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

Here, the ALJ considered Dr. Edouard's opinion in accordance with § 416.920c, and her evaluation of his opinion is supported by substantial evidence. First, the ALJ provided the following summary of Dr. Edouard's physical consultative examination:

> The claimant presented to Pierre Edouard, M.D., on July 7, 2021, for a physical consultative examination (Ex. 15F). The claimant reported a history of a slip and fall in 2016, which resulted in neck and back injuries (Ex. 15F/2). He reported that he underwent discectomies on an outpatient basis, and he was discharged to physical therapy (Ex. 15F/2). A physical examination indicated that the claimant had no difficulty getting on and off the examining table (Ex. 15F/3). An examination of the back indicated there was no scoliosis and no kyphosis apparent (Ex. 15F/4). There was tenderness at the lumbar spine (Ex. 15F/4). A neurological examination indicated there was no sensory deficit to light touch and pin prick (Ex. 15F/4). There was no deficit of the gross and fine motor function (Ex. 15F/4). Romberg and Babinski were positive (Ex. 15F/4). Deep tendon reflexes were present and equal bilaterally (Ex. 15F/4). Seated and supine straight leg raise tests were negative bilaterally (Ex. 15F/5). He was unable to heel and toe walk (Ex. 15F/5). The gait was abnormal with a limp (Ex. 15F/4). He was using a cane as an assistive device, which was medically necessary (Ex. 15F/4).

Tr. 15. As the foregoing summary shows, the ALJ considered both positive and negative findings from Dr. Edouard's examination.

After providing the foregoing synopsis, the ALJ found that Dr. Edouard's opinion regarding the medical necessity of a cane was not persuasive because it was "not supported by the objective medical findings" and "not consistent with the overall record." Tr. 15. The ALJ then proceeded to further explain the basis for her determination regarding persuasiveness,

11

supportability, and consistency.  For instance, the ALJ noted that Dr. Prieto documented, on May 6, 2019, that while Plaintiff used a cane to ambulate, his gait and balance were normal and steady. Tr. 15.  Moreover, notwithstanding Plaintiff's use of a cane on that date, the ALJ found that "the substantial evidence of record shows [Plaintiff] not using a cane for ambulation on a consistent basis."  Tr. 16.  The ALJ explained, *inter alia*, that Plaintiff was prescribed a cane at a May 19, 2019 emergency room visit, but that when Plaintiff visited the emergency room the following month, Plaintiff was not using a cane.  Tr. 16.  Additionally, during that subsequent visit, Plaintiff's coordination was normal, and he ambulated with a steady gait and no limp.  Tr. 16.

Overall, the ALJ concluded that the medical evidence did not support Plaintiff's use of a cane or that it was medically necessary for Plaintiff to use a cane.  Tr. 16.  The ALJ continued to explain:

> For example, the claimant denied any gait disturbance on August 5, August 7, or September 29, 2019 (Ex. 8F/356, 394, 509, or 570). The claimant's gait was intact, and he did not mention a cane on October 14, 2020 (Ex. 11F/16, 18, or 24). A physical examination dated February 18, 2021, indicated his gait was intact (Ex. 13F/13), and similarly, treatment notes dated April 14, 2021, support that the claimant's gait was intact (Ex. 16F/114). Once again, it was noted on June 29, 2021, that the claimant was able to ambulate with a steady gait (Ex. 16F/74); on July 18, 2021, the claimant's gait was intact (with no mention of a cane) (Ex. 16F/65); and treatment notes dated July 24, 2021, indicate the claimant ambulated independently, and at discharge he did not require DMEs (Ex. 16F/60-61). Subsequent treatment notes dated September 1, 2021, indicate the claimant was observed ambulating to the bathroom without difficulty, and at discharge the claimant walked out with a steady gait (no cane was mentioned) (Ex. 17F/32). Finally, treatment notes from Alliance Spine and Joint do not mention gait abnormalities or the use of a cane (Exs. 10F and 12F).

Tr. 16.  Therefore, the ALJ found that a cane was not medically necessary.  Tr. 16.

It is unclear why Plaintiff believes the ALJ erred in evaluating Dr. Edouard's opinion. Plaintiff provides his own synopsis of Dr. Edouard's examination (*see* Plaintiff's Motion at 8), but he does not contend that the ALJ erred in the manner she summarized Dr. Edouard's examination

– and as noted above, the ALJ discussed both positive and negative findings from the examination. Beyond summarizing Dr. Edouard's examination, Plaintiff simply notes in passing that the ALJ erred in finding Dr. Edouard's opinion to be unpersuasive, but Plaintiff does not explain why that is so.   Regardless, as noted above, and as reflected in the ALJ's decision, the ALJ addressed persuasiveness, consistency, and supportability as required under § 416.920c, and the ALJ supported her discussion with specific evidence from the record.  Significantly, the evidence the ALJ pointed to was more than reasonably adequate to support her conclusions regarding the persuasiveness, consistency, and supportability of Dr. Edouard's opinion.  At a minimum, Plaintiff has plainly failed to show that the ALJ's assessment of Dr. Edouard's opinion is not supported by substantial evidence.

### c.  Prior Administrative Medical Findings

Plaintiff argues that the ALJ erred by omitting, without explanation, the following prior administrative medical findings made by the state agency psychologists at the initial and reconsideration levels in May and July 2019: (1) Plaintiff "would likely have problems carrying out detailed instructions"; (2) Plaintiff "would likely have problems . . . maintaining sustained attention/concentration, and completing work tasks at a consistent pace"; and (3) Plaintiff "would perform best in settings that require minimal social interaction, especially with unfamiliar persons."  Tr. 162, 176-77.[1]  Plaintiff has failed to establish error.

---

[1] In addition to the two state agency psychologists that rendered prior administrative medical findings in 2019, two additional state agency psychologists made prior administrative medical findings in June 2021 and January 2022.  *See* Tr. 209-34.  Although Plaintiff remarks generally that the ALJ erred in evaluating the findings of all four state agency psychologists, Plaintiff only specifically addresses the three findings (noted above) made by the state agency psychologists in 2019.  In other words, Plaintiff does not address any of the findings made by the state agency psychologists in June 2021 and January 2022, and Plaintiff does not explain how, if at all, the ALJ erred in evaluating the prior administrative medical findings of the state agency psychologists in June 2021 and January 2022.  Therefore, I only discuss Plaintiff's arguments regarding the 2019

Regarding the first two findings, it is important to consider the full context of what the state agency psychologists stated.   Specifically, they provided the following narrative regarding Plaintiff's "sustained concentration and persistence capacities and/or limitations":

> [Plaintiff] would likely have problems carrying out detailed instructions, maintaining sustained attention/concentration, and completing work tasks at a consistent pace. However, [Plaintiff] seems capable of working without excessive supervision or assistance and working with others, and of sustaining attention to complete simple, repetitive tasks for 2-hour segments over an 8 hour work day.

Tr. 162-176-77.  In evaluating the persuasiveness of their findings, the ALJ explained:

> The State agency psychologists opined that the claimant has "moderate" limitations in all domains except he has a "mild" limitation in adapting and managing himself (Exs. 1A and 3A). The undersigned finds that this opinion is partially persuasive because it is well supported by medically acceptable clinical findings and is consistent with other substantial medical evidence of record. However, evidence received at the hearing level supports that the claimant has "moderate" limitations in adapting and managing himself.

Tr. 19-20.  Thus, the ALJ seemed to agree with the psychologists that, as a general matter, Plaintiff has a "moderate" limitation in at least the domains of (1) understanding, remembering, or applying information, (2) interacting with others, and (3) concentrating, persisting, or maintaining pace.

Nonetheless, "the ALJ's RFC assessment did not need to mirror or match the findings or opinions of any particular medical source because the final responsibility for assessing the RFC rests with the ALJ." *Bullard v. Comm'r of Soc. Sec. Admin.*, No. 8:19-CV-289-T-23MCR, 2020 WL 3668792, at *6 n.10 (M.D. Fla. Feb. 20, 2020), *report and recommendation adopted*, 2020 WL 3640477 (M.D. Fla. July 6, 2020) (citations omitted); *see also League v. Comm'r of Soc. Sec.*, No. 2:20-CV-650-SPC-NPM, 2022 WL 1085540, at *6 (M.D. Fla. Feb. 7, 2022), *report and recommendation adopted*, 2022 WL 703011 (M.D. Fla. Mar. 9, 2022) ("[T]he regulations do not

---

prior administrative medical findings (given that Plaintiff makes no arguments regarding the June 2021 and January 2022 findings).

require an ALJ to adopt into the RFC every part of an opinion that he otherwise finds persuasive."). Moreover, the ALJ was not required to articulate in her decision how she evaluated every individual finding of the state agency psychologists.  *See* 20 C.F.R. § 416.920c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.").  Therefore, the ALJ was not required to formulate an RFC that incorporated every precise limitation that the psychologists found to exist.

Furthermore, the ALJ did include limitations in Plaintiff's RFC that appear to be consistent with the psychologists' findings.  Specifically, the ALJ found that Plaintiff "can concentrate and persist to complete *simple and routine tasks* that involve *up to 3 step commands*."  Tr. 13 (emphasis added).  Notably, Plaintiff's Motion only focuses on the first sentence of the psychologists' narrative regarding concentration and persistence – that Plaintiff "would likely have problems carrying out detailed instructions, maintaining sustained attention/concentration, and completing work tasks at a consistent pace."  Plaintiff's Motion at 11.  But Plaintiff overlooks the very next sentence of the psychologists' narrative – that Plaintiff "seems capable of . . . sustaining attention to complete simple, repetitive tasks for 2-hour segments over an 8 hour work day."  Tr. 162, 177. Viewing both sentences of the psychologists' narrative (regarding concentration and persistence) together, the ALJ's limitation to simple and routine tasks involving up to 3-step commands appears to be consistent with the psychologists' findings.  At a minimum, Plaintiff has failed to show or explain how the psychologists' narrative (with both sentences of the narrative being considered together) is inconsistent with the ALJ's RFC assessment.

Turning to the third finding made by the state agency psychologists in 2019, the full narrative they provided – regarding Plaintiff's "social interaction capacities and/or limitations" – was that Plaintiff "has a history of interpersonal difficulties and would perform best in settings that

require minimal social interaction, especially with unfamiliar persons." Tr. 162, 177. As an initial matter, Plaintiff incorrectly characterizes this finding in his motion. Specifically, Plaintiff's Motion (on pages 10-11) states that the psychologists found that Plaintiff is "restricted in his ability to interact with others such that '[Plaintiff] requires minimal social interaction especially with unfamiliar persons.'" However, as reflected above, the psychologists did not state that Plaintiff *requires* minimal social interaction, only that he would *perform best* in a setting that requires minimal social interaction. In other words, they did not find that Plaintiff must be limited to (or requires) such a setting. *Cf. Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 796 (11th Cir. 2019) ("Dr. Estock said only that Whitten would function 'best' in a well-spaced work setting; he did not say that she required a well-spaced work setting to function at all. Thus, the ALJ did not err by leaving out that limitation."). At any rate, the ALJ clearly considered and accounted for Plaintiff's social interaction limitations by finding that Plaintiff "can tolerate *occasional* interaction with supervisors, co-workers and the public." Tr. 13 (emphasis added). Again, the ALJ was not required to adopt every statement of the state agency psychologists verbatim, and Plaintiff fails to show or explain how the ALJ's limitation to "occasional" interaction is inconsistent with the psychologists' findings. Accordingly, the ALJ did not err in assessing the prior administrative medical findings.[2]

---

[2] Plaintiff also argues that the ALJ improperly relied on the VE's testimony because the ALJ's hypothetical question to the VE failed to include the limitations contained in the prior administrative medical findings. However, for the reasons discussed above, the ALJ was not required to incorporate into Plaintiff's RFC all of the state agency psychologists' findings verbatim. Rather, what the ALJ was required to do was pose a hypothetical that contained all of Plaintiff's impairments. *See Walker*, 2022 WL 1022730, at *3 ("In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. However, the ALJ is not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported. In other words, the hypothetical question need not list every symptom but must provide the VE with a complete picture of the claimant's RFC." (internal quotation marks and citations omitted)). And the ALJ's hypothetical

## 2.  APPARENT CONFLICTS

"At step five [of the sequential evaluation], an ALJ must ascertain whether the jobs that a claimant can perform exist in significant numbers in the national economy."  *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1318 (11th Cir. 2021) (cleaned up) (internal quotation marks and citation omitted).  Here, the ALJ found that Plaintiff is capable of performing work that exists in significant numbers in the national economy (and therefore that Plaintiff is not disabled).  Tr. 21-22.  In determining that Plaintiff can perform jobs existing in significant numbers nationwide, the ALJ relied on the VE's testimony that an individual with Plaintiff's RFC, age, education, and work experience would be able to work as a car wash attendant (38,000 jobs nationwide), housekeeper (221,000 jobs nationwide), or produce sorter (9,000 jobs nationwide).  *See id.*  The ALJ found the VE's testimony in this regard to be consistent with the DOT.  *Id.* at 22.

Plaintiff, however, contends that "apparent conflicts"[3] exist between the VE's testimony and the DOT, and Plaintiff asserts that the ALJ failed to resolve such apparent conflicts.  Specifically, Plaintiff argues that the ALJ failed to resolve apparent conflicts concerning the car wash attendant and produce sorter jobs.  Although Plaintiff does not argue that the housekeeper

---

to the VE did just that – it included all of the limitations the ALJ assessed in Plaintiff's RFC.  *Compare* Tr. 13 (Plaintiff's RFC), *with* Tr. 85-86 (ALJ's hypothetical to VE).

[3] "SSR 00-4p imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony."  *Washington*, 906 F.3d at 1362.  An "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE."  *Id.* at 1365.  "It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony."  *Id.* "At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case."  *Id.*  In other words, "apparent" means "seeming real or true, but not necessarily so."  *Id.* at 1366 (quoting *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015)).

job is also plagued by an apparent conflict,[4] Plaintiff does contend that this matter must nevertheless be remanded because the ALJ's significant-numbers determination was premised upon her finding that Plaintiff can perform all three jobs identified by the VE.  In other words, Plaintiff contends that because the ALJ did not find that the housekeeper job alone – without considering the car wash attendant and produce sorter jobs – exists in significant numbers in the national economy, the ALJ's failure to resolve apparent conflicts concerning the car wash attendant and produce sorter jobs was not harmless.

The Court disagrees.  Even if the Court assumes that the ALJ erred in failing to resolve apparent conflicts concerning the car wash attendant and produce sorter jobs, such errors would be harmless based on the ALJ finding that Plaintiff can perform the housekeeper job, a job with 221,000 positions nationwide.[5]  As discussed herein, the 221,000 figure (for housekeeper jobs nationwide) – a figure that Plaintiff does not contest – is undoubtedly high enough to satisfy the substantial-numbers requirement *as a matter of law*.  Therefore, remanding this matter for the ALJ to address whether the housekeeper job alone satisfies the substantial-numbers requirement would be a wasteless corrective exercise[6] (assuming the ALJ erred in the first place in failing to resolve apparent conflicts concerning the other two jobs).

---

[4] *See* Plaintiff's Motion at 19 (acknowledging that the housekeeper job "does not contain an apparent conflict").

[5] Because any error in not resolving apparent conflicts concerning the car wash attendant and produce sorter jobs would be harmless, the Court does not decide whether apparent conflicts do in fact exist with respect to those two jobs.  Rather, the Court assumes without deciding that the ALJ failed to resolve apparent conflicts concerning the car wash attendant and produce sorter jobs. Thus, the Court assumes that these two jobs are "out of the equation" or "off the table" "for purposes of the 'significant numbers' determination." *Viverette*, 13 F.4th at 1317-18.

[6] *See Pons v. Comm'r of Soc. Sec.*, No. 21-13028, 2022 WL 1214133, at *2 (11th Cir. Apr. 25, 2022) ("We have applied the harmless error rule to social security appeals. If an error is harmless, we will not remand for further findings where doing so would be a 'wasteful corrective exercise.'" (internal citations omitted)); *Sarli v. Berryhill*, 817 F. App'x 916, 917 (11th Cir. 2020) ("A

As both parties recognize, it is necessary to consider the Eleventh Circuit's binding decision in *Viverette* in determining whether any error by the ALJ in failing to resolve apparent conflicts regarding the car wash attendant and produce sorter jobs was harmless. In *Viverette*, the ALJ – in determining the plaintiff could perform work existing in significant numbers nationwide – relied on VE testimony that the plaintiff could perform three jobs which respectively had 104,000, 14,000, and 7,000 positions nationwide (i.e., a total of 125,000 positions). *See* 13 F.4th at 1313, 1317-18. The Eleventh Circuit, however, found that an apparent conflict existed with respect to the job with 104,000 positions. *See id.* at 1315-17.

That did not end the inquiry though. *See id.* at 1317-18. The Eleventh Circuit did make clear that it could not "disregard . . . the failure to address the apparent conflict [] 'on the grounds that no conflict in fact existed.'" *Id.* at 1318. However, I agree with Defendant that the Eleventh Circuit "left the door open for reviewing courts to evaluate whether the remaining jobs exist in significant numbers, such that the ALJ's error was harmless, in cases where the remaining jobs represent a larger percentage of the total jobs and constituted a relatively high number of jobs." Defendant's Motion at 14 (citing *Viverette*, 13 F.4th at 1318). In other words, *Viverette* does not preclude this Court from determining that the housekeeper job – the remaining job after exclusion of the other two jobs with alleged apparent conflicts – exists in significant numbers in the national economy *if it is abundantly clear that it does*. Rather, in *Viverette*, the Eleventh Circuit stated that

---

harmless error—that is, one that does not affect the ALJ's ultimate decision—does not constitute a ground for reversal." (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983))); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision." (citing *Ware v. Schweiker*, 651 F.2d 408, 412-13 (5th Cir. Unit A 1981))); *Garcia Travieso v. Berryhill*, No. 17-20021-CIV, 2018 WL 11346677, at *6 (S.D. Fla. Mar. 28, 2018) ("[R]emand is always a wasteful corrective exercise where no further findings could be made that would alter the ALJ's decision of non-disability.").

it could not conclude the ALJ's failure to address the apparent conflict "[o]n th[e] record" in that case was harmless.  *Viverette*, 13 F.4th at 1318.

But the circumstances in *Viverette* were remarkably different from the circumstances present in this case.  In *Viverette*, the exclusion of the job with 104,000 positions meant that the court would have had to determine that the remaining 21,000 positions (for the other two jobs) satisfied the significant-numbers threshold in order to find that the ALJ's error was harmless.  The Eleventh Circuit noted that the significant-numbers determination is generally a question of fact to be determined by the ALJ, and it therefore stated that it was "hesitant" to make any such factual determination itself given that more than 80% of the positions the ALJ relied on in the significant-numbers determination had to be excluded from the equation (again, leaving only 21,000 positions).[7]  *Id.* at 1318.

In this case, however, removal of the 47,000 car wash attendant and produce sorter positions from the equation (from the 268,000 positions the ALJ considered) still leaves 221,000 positions (for the housekeeper job).  As Plaintiff recognizes, that results in the removal of only approximately 17.5% of the positions the ALJ considered (compared to the more than 80% removed from the equation in *Viverette*).  But what is even more significant is that a high number of jobs remains in this case even if the 47,000 car wash attendant and produce sorter positions are excluded from consideration.  Again, exclusion of those jobs still leaves 221,000 positions, which is more than ten times the (at-most) 21,000 positions remaining in *Viverette*.  And I reiterate that Plaintiff has not challenged or questioned the 221,000 figure for housekeeper positions in the national economy.

---

[7] The Eleventh Circuit even found that the 21,000 number may be overstated.  *See id.* at 1319.

Significantly, the Eleventh Circuit and other circuit courts that have considered whether a certain number of positions have satisfied the significant-numbers threshold have found that numbers far below the 221,000 housekeeper positions available here have satisfied that threshold. *See Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (80,000 positions); *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020) (78,000 positions); *Milhem v. Kijakazi*, 52 F.4th 688, 696-97 (7th Cir. 2022) (finding 89,000 positions to be significant, noting that the Seventh Circuit previously found 140,000 positions to be "well above the threshold for significance," and collecting cases from other circuit courts that found numbers ranging from 10,000 to 32,000 positions nationwide to be significant); *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 n.7 (9th Cir. 2017) (noting that 25,000 positions nationwide qualifies as significant).

Notably, in *Viverette*, in stating that it could not conclude the ALJ's error was harmless, the Eleventh Circuit relied on a Tenth Circuit case, which it found to be persuasive. *See Viverette*, 13 F.4th at 1319 n.3 ("We find *Kimes* to be persuasive and follow its approach." (citing *Kimes v. Comm'r, SSA*, 817 F. App'x 654 (10th Cir. 2020))). In *Kimes*, the Tenth Circuit found it appropriate to remand the case to the ALJ for the significant-numbers determination after finding that it could not consider 80,000 of 96,000 positions the ALJ considered in determining that the significant-numbers requirement was satisfied. 817 F. App'x at 659. The Tenth Circuit made clear that it would be inappropriate for it "to decide, in the first instance, whether a *relatively low number* qualifies as a 'significant number' of jobs." *Id.* (emphasis added).

Here, the Court reiterates that the number of positions under consideration (after exclusion of the positions for two of three jobs) is 221,000. This unchallenged figure is remarkably higher than the "relatively low number" of positions in *Viverette* (21,000 at most) and *Kimes* (16,000). Moreover, as indicated above, the 221,000 figure is *well above* the significant-numbers threshold

in other circuits.   Therefore, the conclusion that 221,000 positions nationwide satisfies the significant-numbers requirement is inescapable.   Remanding this matter to the ALJ to confirm the same would be an exercise in futility.   Simply stated, this is not a situation where further factfinding is needed.   *Cf. Viverette*, 13 F.4th at 1318 ("Where additional (or more specific) agency fact-finding is needed, remand is the appropriate disposition.").   As such, even if the Court assumes the ALJ erred in failing to resolve apparent conflicts concerning the car wash attendant and produce sorter jobs, such errors would undoubtedly be harmless.[8]

## **CONCLUSION**

For the reasons discussed above, it is **ORDERED and ADJUDGED** that Plaintiff's Motion [DE 31] is **DENIED** and Defendant's Motion [DE 32] is **GRANTED**.   The Court will enter a separate Final Judgment **affirming** the final decision of the Commissioner.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 17th day of December 2023.

*Jared Strauss*

**Jared M. Strauss**
**United States Magistrate Judge**

---

[8] I recognize that Plaintiff has cited certain cases from the Middle District of Florida that support his argument that the Court must remand this matter to the ALJ if the ALJ failed to identify and resolve any apparent conflicts (regardless of how many jobs are excluded from the equation as a result of such error).   *See* Plaintiff's Motion at 19-21.   However, I do not find those cases to be persuasive on this issue (for the reasons discussed above).   I also note that other cases in both this District and the Middle District of Florida have reached a conclusion in line with the conclusion that I reach here.   *See, e.g.*, *Mesa v. Kijakazi*, No. 21-20424-CIV, 2022 WL 4369733, at *14 (S.D. Fla. May 11, 2022), *report and recommendation adopted*, 2022 WL 4366950 (S.D. Fla. Sept. 21, 2022); *Rodriguez v. Comm'r Soc. Sec. Admin.*, No. 8:21-CV-3002-DNF, 2022 WL 4364506, at *4-5 (M.D. Fla. Sept. 21, 2022); *Denmark v. Kijakazi*, No. 8:20-CV-2852-AEP, 2022 WL 831903, at *7-8 (M.D. Fla. Mar. 21, 2022).